[Cite as *State v. Durkin*, 2013-Ohio-5635.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 12 MA 193 |
| V. | ) | |
| | ) | OPINION |
| JUSTIN DURKIN, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from Youngstown Municipal Court of Mahoning County, Ohio
Case No. 12CRB1085

JUDGMENT:     Affirmed

APPEARANCES:
For Plaintiff-Appellee

Dana Lantz
Prosecutor
Kathleen Thompson
Assistant Prosecutor
26 S. Phelps Street, 4th Floor
Youngstown, Ohio 44503

For Defendant-Appellant

Attorney Joshua R. Hiznay
1040 S. Commons Place, Suite 202
Youngstown, Ohio 44514

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: December 18, 2013

DONOFRIO, J.

{¶1}  Defendant-appellant Justin Durkin (Durkin) appeals the decision of the Youngstown Municipal Court sentencing him to thirty days in jail following his conviction for possession of a dangerous drug.

{¶2}  On May 16, 2012, Durkin was arrested for drug paraphernalia in violation of R.C. 2925.14, a fourth-degree misdemeanor. Youngstown Police Officers noticed a vehicle with no front license plate and initiated a traffic stop. The officers asked the occupants if they could search the vehicle. Durkin, who was driving the vehicle, indicated that it was not his vehicle. The passenger (and owner of the vehicle) denied the officers permission. The officers called for a canine unit, patted down both Durkin and the owner of the vehicle, and put the owner in the back of the cruiser to await the canine unit. When the canine unit arrived, it was alerted to the scent of narcotics in the vehicle. Officers then searched the vehicle and uncovered a crack pipe under the driver's seat, and a spoon, syringes, and pill bottles under the passenger's seat. Thereafter, Durkin was arrested and charged with drug paraphernalia.

{¶3}  On May 17, 2012, prior to retaining counsel, Durkin appeared for his arraignment and pleaded not guilty. Thereafter, Durkin appeared in court, sought court appointed counsel and waived his right to a speedy trial. The trial court appointed Durkin counsel who subsequently filed motions for discovery, intervention, and suppression.

{¶4}  On October 15, 2012, Durkin appeared with counsel and, pursuant to Crim.R. 11 negotiations, withdrew his initial plea of not guilty and pleaded no contest to the heightened, amended charge of possession of a dangerous drug, a violation of R.C. 4729.51(C)(3), a first-degree misdemeanor. (Tr. 3). This offense, unlike the drug paraphernalia charge, does not carry a mandatory driver's license suspension. Durkin pleaded no contest to this higher, amended charge because he had just started employment and feared that a suspension of his license would cost him his new job. *See* Tr. 7. As part of the Crim.R. 11 agreement, the State recommended a fine, court costs, and one year community control in exchange for the plea. (Tr. 3).

{¶5}   Upon accepting Durkin's no contest plea, the court asked Durkin how long he had been using crack. (Tr. 5). The colloquy that followed is the basis for this appeal. When Durkin failed to answer the court's questions directly, the court declared: "Mr. Durkin, you are not accepting any responsibility for this at all because you are an addict and addicts are the best liars in the world so now you are going to jail to have some time to think about it * * * I am done with you." (Tr. 6). Durkin then stated that he had been using crack for three months and prior to that he was addicted to pain pills. *Id*. He then apologized to the court. Refusing Durkin's apology, the court reaffirmed its jail sentence saying "I asked you a simple question and you had to lie about it because you are an addict so now you are going to jail." *Id.* Durkin informed the court that he "got a great job," implying that he was worried about losing that job if he was sent to jail. (Tr. 7-8). In response to Durkin's pleas, the court responded: "Mr. Durkin, and you are going to lose that great job too because you are still an addict. You are still a liar. You did this to yourself, Mr. Durkin." (Tr. 8).

{¶6}   The court then sentenced Durkin to 30 days in jail, court costs, $100.00 reimbursement for community control supervision, and 3 years of intensive probation supervision subject to random drug and/or alcohol screens. Subsequently, the trial court granted Durkin's motion to suspend execution of sentence and continued bond. This appeal followed.

{¶7}   Durkin raises one assignment of error which states:

THE TRIAL COURT ERRED BY IMPOSING A SENTENCE WHICH INCLUDED A DEFINITE JAIL TERM OF THIRTY DAYS.

{¶8}   Under this assignment of error, Durkin maintains that the trial court's 30-day jail sentence was punishment for his less than forthright answers to the court's questions, rather than for the crime itself – thus constituting an abuse of discretion.

{¶9}   To support this conclusion, Durkin first points to the trial court's failure to conduct a presentence investigation. From this, Durkin infers that the trial court did

not consider the sentencing factors laid out in R.C. 2929.22(B)(1). In support, Durkin highlights the fact that there is nothing in the record which demonstrates that he has a criminal history or that he is a substantial risk to members of the community, and that there were no victims for this particular crime. In so doing, Durkin suggests that in conjunction with this "silent" record, the lack of a supplementary presentence investigation precludes any finding that the trial court considered the factors of R.C. 2929.22(B)(1).

{¶10} Next, Durkin suggests that the trial court, in derogation of R.C. 2929.22(B)(2), also failed to consider mitigating evidence. Durkin points to the fact that he is no longer using drugs, that he got a new job, and that the sentence imposed was more severe than the prosecutor's recommendation. Durkin contends that the trial court ignored these factors and the plea agreement, and instead imposed the sentence as punishment for his less than forthright answers rather than for the crime itself.

{¶11} In response, the State maintains that the 30-day sentence was not unreasonable, arbitrary, or unconscionable, and thus was not an abuse of discretion. In support, the State (1) points to the fact that the sentence was within the statutory limit; (2) asserts that Durkin has not affirmatively shown that the trial court failed to follow the sentencing criteria; and (3) highlights aggravating factors that the trial court considered.

{¶12} The State concedes that the record does not demonstrate that Durkin has a criminal history or that he poses a threat to society. However, the State contends that from this it does not follow that the sentence was unreasonable or that the trial court abused its discretion.

{¶13} To counter Durkin's allegation that the trial court ignored mitigating factors, the State points to the court's consideration of aggravating factors. The State contends that the sentence imposed by the trial court does in fact serve the primary purposes of misdemeanor sentencing (the achievement of which being partly dependent upon the trial court's consideration of the need to change the offender's

behavior). R.C. 2929.21(A). The State suggests that here, this need is great in light of aggravating factors that the trial court did indeed consider. Namely, the State contends that Durkin's history of addiction to crack cocaine and pain pills indicate Durkin's propensity for recidivism. The State suggests that the 30-day sentence diminishes this propensity, thereby achieving the purposes of misdemeanor sentencing and thus, is not an abuse of discretion.

**{¶14}** The overriding purposes of misdemeanor sentencing are to punish the offender and to protect the public from future crime by the offender and others. R.C. 2929.21(A). In order to achieve these purposes, the sentencing court shall consider the impact of the offense on the victim, the need to change the offender's behavior, the need to rehabilitate the offender, and the desire to make restitution to the victim and/or the public. *Id.*

**{¶15}** A misdemeanor sentence shall be reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing set forth above, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders. R.C. 2929.21(B).

**{¶16}** In determining the appropriate sentence for a misdemeanor, the court shall consider all of the following factors: (a) the nature and circumstances of the offense; (b) whether the circumstances surrounding the offender and the offense indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense; (c) whether the circumstances regarding the offender and the offense indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a danger to others and that the offender's conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences; (d) whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious; (e) whether the offender is

likely to commit future crimes in general. R.C. 2929.22(B)(1). The court may also consider other relevant factors. R.C. 2929.22(B)(2). Additionally, before imposing a jail term as a sentence for a misdemeanor, the court shall consider the appropriateness of imposing a community control sanction. R.C. 2929.22(C).

**{¶17}** An appellate court reviews a trial court's sentence on a misdemeanor violation under an abuse of discretion standard. R.C. 2929.22; *State v. Davis*, 7th Dist. No. 10-MA-98, 2011-Ohio-3184, ¶ 10, citing *State v. Frazier*, 158 Ohio App.3d 407, 2004-Ohio-4506, 815 N.E.2d 1155, ¶ 15 (1st Dist.). An abuse of discretion means more than a mere error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). When reviewing a sentence, an appellate court should be guided by the presumption that the trial court's findings were correct. *State v. Davis*, 7th Dist. No. 10-MA-98, 2011-Ohio-3184, ¶ 10, citing *In re Slusser*, 140 Ohio App.3d 480, 487, 748 N.E.2d 105 (3d Dist.2000).

**{¶18}** According to R.C. 2929.22, the trial court must consider the criteria listed in that statute before sentencing someone convicted of a misdemeanor. *State v. Crable,* 7th Dist. No. 04 BE 17, 2004-Ohio-6812, ¶ 24. However, the trial court is not required to recite on the record its reasons for imposing the sentence. *Id.* Rather, failing to explain the statutory reasons behind a certain sentence is only fatal if there are mitigating factors without any aggravating factors given at the sentencing hearing. *Id.* at ¶ 24, citing *State v. Flors*, 38 Ohio App.3d 133, 140, 528 N.E.2d 950 (8th Dist.1987).

**{¶19}** Durkin was convicted of possession of a dangerous drug, a first-degree misdemeanor, in violation of R.C. 4729.51(C)(3). A first-degree misdemeanor carries a maximum sentence of 180 days. R.C. 2929.24(A)(1). The trial court here imposed a 30-day sentence; thus, well within the statutory limit.

**{¶20}** Failure to consider the sentencing criteria is an abuse of discretion; but when the sentence is within the statutory limit, a reviewing court will presume that the trial judge followed the standards in R.C. 2929.22, absent a showing to the contrary.

*State v. Bartimus*, 7th Dist. No. 02-BE-40, 2003-Ohio-2379, ¶ 25, citing *State v. Wagner,* 80 Ohio App.3d 88, 95-96, 608 N.E.2d 852 (12th Dist.1992).

**{¶21}** Here, Durkin has made no affirmative showing to the contrary. Rather, to support his position, Durkin merely relies on (1) the court's failure to consider mitigating factors; (2) the absence of a presentence investigation; (3) the inadequacy of the record to demonstrate his criminal history; and (4) and the court's focus on his responses at the sentencing hearing rather than on the crime itself. None of these arguments rebut the presumption.

**{¶22}** First, although the trial court did not explicitly mention mitigating evidence, it did consider a number of aggravating factors such as Durkin's history of drug addiction and the likelihood of his recidivism. Thus, the failure to mention mitigating factors was not fatal. *See generally Crable,* at ¶ 26. (failure to mention mitigating factors at sentencing not fatal where there were also aggravating factors to consider; the aggravating factors balance out the mitigating factors).

**{¶23}** Second, "[t]he decision to order a presentence report lies within the sound discretion of the trial court. Absent a request for a presentence report in accordance with Crim.R. 32.2, no grounds for appeal will lie based on a failure to order the report, except under the most exigent of circumstances." *State v. Adams*, 37 Ohio St.3d 295, 525 N.E.2d 1361 (1988), paragraph four of the syllabus. Thus, the absence of the presentence investigation does not constitute an affirmative showing that rebuts the presumption.

**{¶24}** Third, this court has also held that where the defendant's arguments rely solely on the absence of specific findings or statements by the trial court, they do not provide an affirmative showing that the trial court in fact did not consider the requisite statutory criteria, and thus, such arguments are meritless. *State v. Jick*, 7th Dist. No. 08 MA 110, 2009-Ohio-4966, ¶ 23.

**{¶25}** By contrast, a showing, for example, that the trial court made reference to its own preconceived sentencing "policy" for the particular offense at bar *would* be an affirmative indication that the court did not consider the standards of R.C.

2929.22. (Emphasis added.) *See Jick,* at ¶ 21 (confirming the court's holding in *State v. Piotrowski*, 10th Dist. No. 05AP-159, 2005-Ohio-4550, ¶ 9, that the trial court erred by stating that it had a blanket and preconceived policy as to how to sentence OVI offenders).

{¶26} Here, although the trial court's statements taken as a whole may suggest that the court's general philosophy regarding drug addicts contributed to its decision, the court did not state explicitly that it had a "policy" in regards to the sentencing of such offenders. *See e.g.* (Tr. 6). Accordingly, the court's statements do not rise to the level first required by *Piotrowski* and later recognized by this court in *Jick*. Thus, Durkin has failed to rebut the presumption that the court considered the factors of R.C. 2929.22.

{¶27} In a misdemeanor case, a silent record creates a rebuttable presumption that the sentencing court considered the sentencing criteria. *State v. Vittorio*, 7th Dist. No. 09-MA-166, 2011-Ohio-1657, ¶ 26, citing *State v. Best*, 7th Dist. No. 08 MA 260, 2009-Ohio-6806, ¶ 14.

{¶28} Here, although the record prior to the sentencing hearing failed to trigger any of the sentencing factors of R.C. 2929.22, and although the trial court did not explicitly state that it was considering the criteria at the hearing, the record here is not entirely silent. Where the trial court does not directly indicate that it considered R.C. 2929.22 when sentencing, it may nevertheless be gleaned from the record that the court had some of the sentencing factors before it for consideration. *State v. Cossack*, 7th Dist. No. 08 MA 161, 2009-Ohio-3327, ¶ 28. In *Cossack*, this court held that the appellant failed to make an affirmative showing that the trial court did not consider R.C. 2929.22 even where (1) the record was silent as to the trial court's consideration of R.C. 2929.21 and 2929.22; (2) the court did not state at the sentencing hearing or in its sentencing judgment that it considered the purposes and principles of misdemeanor sentencing; or (3) discuss the factors of R.C. 2929.22. *Id.* Rather, because the appellant expressed that he wished to receive "garage arrest" (house arrest) as a sentence at the sentencing hearing, community control was

before the court for consideration, and, although it did not state its reasons for refusing to impose the requested sentence, it was not required to do so. *Id.*, at ¶ 29. Thus, the court did not abuse its discretion because the record showed the presence of factors that it could have considered under R.C. 2929.22. *Id.*

**{¶29}** In the instant case, consistent with this Court's holding in *Cossack*, it may be gleaned from the record that the trial court had some of the sentencing factors before it for consideration. As in *Cossack*, "while the facts of the case were not discussed by the trial court, the prosecutor or defense counsel [during sentencing]," Durkin did express, albeit indirectly, what he wanted to receive as a sentence. *Cossack*, at ¶ 28. Durkin objected to the trial court's 30-day sentence saying "Your Honor, I just got a great job"; thus implying that – in order to retain his new job – the court should impose the one year community control sentence pursuant to his Crim.R. 11 plea agreement. (Tr. 7). Thus, as in *Cossack,* community control was before the trial court for consideration here and although the trial court did not state reasons why it did not impose it, it was not required to do so. *See Cossack,* at ¶ 29.

**{¶30}** In addition, the colloquy between Durkin and the trial court also revealed a number of aggravating factors that the court would have considered. The court's inquiry into how long Durkin used crack, Durkin's response of "three months," and Durkin's statement that he was also formerly addicted to pain pills all indicate that the trial court here also considered Durkin's history of drug addiction and the likelihood of his recidivism – both aggravating factors under R.C. 2929.22(B). The trial court's consideration of these aggravating factors further indicates that the trial court did in fact consider the sentencing criteria of R.C. 2929.22 and thus did not abuse its discretion.

**{¶31}** Lastly, Durkin has offered no caselaw support for the notion that his less than forthright responses to the questions posed at sentencing or his history of addiction are improper factors for the court to consider at sentencing. Indeed, one of the purposes of the sentencing hearing itself is to give the sentencing court an

opportunity to acquire a more thorough knowledge of the defendant's character and history. *See State v. Barker*, 53 Ohio St.2d 135, 150, 372 N.E.2d 1324 (1978). Durkin's responses at the sentencing hearing in this matter could have reasonably been viewed by the trial court as a reflection of Durkin's character; a demonstration of his failure to accept responsibility and/or his lack of remorse for the crime for which he was convicted (following his no contest plea).

**{¶32}** In sum, because it can at least be gleaned from the record that the trial court considered both Durkin's request for community control and aggravating factors of R.C. 2929.22, Durkin has failed to show that the trial court abused its discretion in imposing the 30-day sentence. Moreover, in light of Durkin's history of addiction and less than forthright answers at the sentencing hearing, the 30-day sentence could certainly be viewed as the trial court's response to its consideration of the need to change Durkin's behavior in order to achieve the overriding purposes of misdemeanor sentencing. R.C. 2929.21(A).

**{¶33}** Accordingly, Durkin's assignment of error is without merit.

**{¶34}** The judgment of the trial court is affirmed.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.