[Cite as *State v. Candelario*, 2025-Ohio-105.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                :

    Plaintiff-Appellee,              :

                                       No. 113799

    v.                                          :

KRISTEL CANDELARIO,                    :

    Defendant-Appellant.           :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 16, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-682211-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anna M. Faraglia and Caroline Maver, Assistant Prosecuting Attorneys, *for appellee*.

Brian D. Kraft, *for appellant*.


SEAN C. GALLAGHER, J.:

{¶ 1} Kristel Candelario appeals her conviction arising from her pleading guilty to aggravated murder and child endangering for purposely causing the death of her 16-month-old daughter by leaving her unattended and locked in a crib for ten days while Candelario vacationed. For the following reasons, we affirm.

{¶ 2} The facts of Candelario's conduct demonstrate a level of depravity few cases reach. The victim's death was gruesome, slow, and — one can only imagine — agonizing. Candelario does not dwell on the underlying facts. It suffices that Candelario left her infant child alone in a crib while she vacationed. By the time Candelario returned home after ten days and called authorities, her child had suffered greatly before death. The coroner surmised that the child had died seven to eight days after being left behind, showed signs of severe dehydration and starvation, and had resorted to eating her own feces in the attempt to survive. At any point during the first week of her travels, Candelario could have saved her child's life. Candelario initially lied to investigation officers and attempted to downplay her actions. After investigators pieced together video footage from surveillance cameras and through conversations with those with whom Candelario travelled, it was clear that Candelario left her child alone in the crib for ten days with little concern. At the same time, Candelario had inexplicably left her other child with her parents.

{¶ 3} During the pretrial proceedings, Candelario was detained in county jail. Local jail officers conducted a routine search of Candelario's possessions and discovered a glass vial of perfume, considered contraband. Candelario claimed that one of her retained attorneys gave her the perfume in the holding cell during a pretrial conference. Although the trial court precluded Candelario from visiting with counsel in the court's holding cell during pretrial conferences for a month following the allegation, the allegations were never formally explored and remained unproven. The prosecutors declined to charge anyone over the incident.

{¶ 4} In this appeal, Candelario presents an extremely narrow argument. She claims her two retained attorneys provided ineffective assistance of counsel based on the alleged conflict of interest between her and one of them arising from her own allegations, and as a result of that conflict, her guilty plea was not knowingly, voluntarily, or intelligently entered.

{¶ 5} The Sixth Amendment guarantee of effective trial counsel generally safeguards two distinct rights: "the right to reasonably competent counsel," and additionally, "the right to counsel's undivided loyalty." *State v. Nikolic*, 1991 Ohio App. LEXIS 5473, *3-5 (8th Dist. Nov. 14, 1991), quoting *McMann v. Richardson*, 397 U.S. 759, 771, fn. 14 (1970), and *Glasser v. United States*, 315 U.S. 60, 70 (1942). "Ordinarily, in cases alleging ineffective assistance of counsel based upon a conflict of interest, the conflict alleged exists between the interest of one defendant and the interest of another defendant, each represented by the same counsel." *Id.*, citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980), and *Holloway v. Arkansas*, 435 U.S. 475 (1978). That, however, is not the only situation in which a conflict of interest can be an issue. When the conflict is not based on dual representation, "[t]he critical inquiry instead is whether the defendant demonstrated that counsel actively represented conflicting interests and, secondly, whether the defendant demonstrated that the actual conflict of interest adversely affected [the] lawyer's performance." *Id.*, citing *Burger v. Kemp*, 483 U.S. 776, 783 (1987), and *Strickland v. Washington*, 466 U.S. 668, 692 (1984).

{¶ 6} In accordance with those constitutional concerns, it has been concluded that "'[i]n order to satisfy a Sixth Amendment claim of ineffective assistance of counsel, [an] appellant must demonstrate that an actual conflict of interest adversely affected [their] counsel's performance.'" *State v. Sanchez*, 2000 Ohio App. LEXIS 1920, *14 (8th Dist.), quoting *State v. Keith*, 79 Ohio St.3d 514, 535 (1997), and *Cuyler* at 348. Courts do not begin with a presumption "that the mere possibility of a conflict of interest resulted in ineffective assistance of counsel. A possible conflict of interest is simply insufficient to challenge a criminal conviction." *Id. State v. Manross*, 40 Ohio St.3d 180 (1988).

{¶ 7} Candelario presents several unsupported arguments in arguing that one of her attorneys rendered ineffective assistance — claiming that he was inexperienced to handle what was then a potential capital case and that his providing the contraband caused an irreparable conflict of their interests. She fails to address, discuss, or consider the fact that she retained another attorney for her defense who was present during the entirety of the time for which she claims her interests were not safeguarded, severely limiting our review. *See State v. Quarterman,* 2014-Ohio-4034, ¶ 19, citing *State v. Bodyke,* 2010-Ohio-2424, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part); App.R. 16(A)(7). We need not dwell on that issue, however, because Candelario has not presented anything other than speculation to support her claims.

{¶ 8} In order to demonstrate that her attorney rendered ineffective assistance based on the alleged conflict of interest, Candelario is required to

demonstrate that the conflict adversely affected the lawyer's performance. On this point, especially in consideration of the fact that she had retained two attorneys in her defense, Candelario's appellate arguments miss the mark. There is no basis within this record to support the notion that any alleged conflict created by Candelario's own allegations against her attorney infected his advice in resolving a case for which the underlying facts were, by and large, uncontested. She simply presumes that fact of consequence based on the unproven allegation underlying her conflict-of-interest claim. The allegation of a conflict of interest alone is insufficient to warrant reversing a criminal conviction.

{¶ 9} Her sole remaining claim is that because she pleaded to the indictment, her attorney was necessarily ineffective because she received no benefit to the guilty plea. Candelario has presented no authority in support of her argument that a guilty plea must necessarily result in a reduction in sentencing exposure or the severity of the offense in order to be deemed valid.

{¶ 10} The underlying facts are undisputed. The sole issue is applying those facts to the elements of the charged offenses. Even if the State had a weaker case, "'there are a multitude of reasons why a defendant'" would willingly "'enter a guilty or no contest plea, including that "a defendant may want to take responsibility for his crime, a defendant may wish to avoid the attention of a public trial or a defendant may simply want the case to be over and spare himself (and perhaps also his family) the time and stress of going through a trial."'" *State v. Brown*, 2023-Ohio-2540, ¶ 13 (11th Dist.), quoting *State v. Musleh*, 2017-Ohio-8166, ¶ 29 (8th Dist.), and

citing *State v. Talley*, 2018-Ohio-5065, ¶ 34-40 (11th Dist.). It is not self-evident that Candelario received no benefit to the guilty plea merely because she pleaded guilty to the most severe, charged offense — which nevertheless resulted in all but one other of the counts being dismissed. Accepting Candelario's argument would create a bright-line rule that all guilty pleas must achieve some form of limits as to the severity of the offense or the sentence in order to be valid. No such rule has been cited or demonstrated to exist by the arguments presented.

{¶ 11} Candelario's sole assignment of error is overruled. The convictions are affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, A.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court of Appeals.)